UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| STACY NEFF, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:15-CV-231-GFVT-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff, Stacy Neff, appeals the Commissioner's denial of his application for disability (particularly, Title II) benefits. Both parties, via motions,[1] claim entitlement to judgment. The District Court referred the matter to the undersigned for a Recommended Disposition. DE #13 (Order). The Court **RECOMMENDS** that the District Judge **GRANT** the Commissioner's motion (DE #12) and **DENY** Neff's motion (DE #11) because substantial evidence supports the findings resulting in the administrative decision, and the ALJ properly applied the relevant legal standards.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Neff is currently 59 years old. DE #9-1, at 65.[2] Neff alleges disability beginning on September 30, 2011. *Id.* at 65-66. He applied for benefits on August 20, 2012. *Id.* at 65. His claims were initially denied on November 20, 2012, *id.* at 84, and denied upon reconsideration on January 18, 2013, *id.* at 90. Neff then filed a written request for a

---

[1] The Commissioner filed a motion for summary judgment; Neff filed a motion for judgment on the pleadings. General Order 13-7 contemplates either type of filing.
[2] All citations correspond with the ECF pagination. The administration record is at DE #9-1.

1

hearing on March 1, 2013. *Id.* at 93. Administrative Law Judge ("ALJ") Roger L. Reynolds held a hearing on the application on March 10, 2014. *Id.* at 114. At the hearing, Neff appeared via video conference and testified; attorney Kyle Reeder represented him. *Id.* at 35. William Harpool, an impartial vocational expert (VE), also testified. *Id.* The ALJ subsequently denied Neff's claims on March 26, 2014. *Id.* at 16-32; *see also id.* at 35-63 (Hrg. Transcript). The Appeals Council denied review and thus upheld the ALJ's decision on June 9, 2015. *Id.* at 4.

The ALJ made several particular findings. He determined that Neff has not engaged in substantial gainful activity since September 30, 2011, the alleged onset date. *See* DE #9-1, at 21. The ALJ next determined that Neff has numerous severe impairments. *Id.* at 22. However, ALJ Reynolds then found that Neff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" *Id.* at 24. The ALJ further found that Neff "has the residual functional capacity to perform a range of medium, light and sedentary work[.]" *Id.* at 25. Accordingly, the ALJ, relying largely on his formulated hypothetical and VE input, found "jobs that exist in significant numbers in the national economy that [Neff] can perform[.]" *Id.* at 28. Based on all these considerations, the ALJ determined that Neff "has not been under a disability . . . from September 30, 2011, through" March 26, 2014. *Id.* at 29. Unsatisfied with the result of the SSA's administrative process, Neff turned to federal district court for review.

II.     **ANALYSIS**

A.     *Standard of Review*

The Court has carefully read the full decision and all medical reports it cites. The Court also has read and considered the full administrative hearing and record. Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing for judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *id.* § 1383(c) (providing for judicial review for Supplemental Security Income claims to the same extent as provided in § 405(g)).

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence, even substantial evidence, to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if

substantial evidence supports the ruling, even if the Court might have decided the case differently. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines residual functional capacity ("RFC") and whether the claimant can perform past relevant work. *Id.* The inquiry at this stage is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden of proof shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834

F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the SSA's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

> **B.**     *The ALJ did not err in considering Neff's conditions or in finding residual functional capacity.*

Neff first attacks the ALJ's RFC determination on several fronts. DE #11-1, at 3-6. However, on this record, substantial evidence clearly supports the ALJ's RFC conclusion.[3]

*First*—hypertension complications / edema. As relevant here, the ALJ found the following:

> Although the claimant has a history of hypertension, treatment records indicate the condition is responsive to medications, as reflected by blood pressure measurements throughout the record. Further, the record is void of complications related to the condition such as end stage organ disease. Accordingly, the claimant's hypertension does not result in disabling limitations.

DE #9-1, at 27. In this argument, Neff attempts to connect edema with the hypertension that the ALJ recognized, but the Court sees no evidentiary link between the two. *See* DE #11-1 (Claimant's brief), at 4 (The edema "may or may not have been related to his hypertension."); *id.* at 5 (stating, without support, that the hypertension was "the likely

---

[3] A potential issue of concern for Neff, lurking throughout assessment of the motion, is the fundamental principle that, even if one or a few of the myriad criticisms Claimant presses has some merit, the Court will not necessarily reverse the ALJ. Instead, the Court "will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion," and if any error is harmless. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 648 (6th Cir. 2009). That is—Neff may attempt to flyspeck the decision for misstatements or omissions, but finding one (or some) may not, under the deferential standard of review, necessarily lead to remand or another different result.

cause of his edema"). Nevertheless, despite no obvious or record-established connection, the Court will evaluate the edema suggestion.

The ALJ explicitly affirmed that he "considered all symptoms[.]" DE #9-1, at 25. This would include edema consideration, per some of (treating source) Dr. Stafford's earlier medical records. "[I]t is well settled that[] an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (internal alteration omitted). Regardless, the Court can consider the edema records "even if the ALJ failed to cite" them. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Neff unequivocally reported to Dr. Stafford, in July of 2010, that his swollen legs "do not bother him." *Id.* at 238. While Stafford certainly noted edema at that time (and in July 2011), and prescribed some treatment, Neff remained without significant complaint and able to "[m]ov[e] all four extremities." *Id.* at 240. However, Stafford's records indicate positive change regarding the presence of edema over time; he noted "[n]o edema" during an evaluation in October 2012. *Id.* at 228. Stafford again confirmed, though, that the "leg swelling does not bother" Neff. *Id.* at 241. Indeed, Neff would "walk[] around his property," *id.* at 238, and do so "every day," *id.* at 241. Stafford recommended that Neff walk "as fast as possible with a target of 60 minutes each day for life." *Id.* Neff "work[ed] out in his yard everyday," *id.* at 246, and there were no lesions on his feet. *Id.* at 250. Neff even did weed eating on his yard (he got a piece of wire fencing lodged in his lower leg doing so). *Id.* at 255; *see also id.* at 257 ("no lingering wire pieces"). Regardless, in October 2012, Dr. Haziq also explicitly noted: "No edema." *Id.* at 207. Perhaps some edema returned in July 2013, per Nurse Norfleet, apparently

connected to the weed eater incident, but there is no suggestion that this was an enduring condition or made Neff disabled in any way. *See id.* at 257. The record shows no complaints by or limitations of Neff based on edema.

The Court sees no error in the RFC determination regarding consideration of a symptom that (1) did not exist, per Haziq and Stafford, in 2012 (during the alleged disability period), and (2) did not bother Neff in 2010-11 (before the alleged disability period), per Stafford. Especially given the deferential standard of review here, the ALJ's treatment of the issue easily passes muster.[4] The ALJ did not reversibly err by not explicitly mentioning a symptom in his decision text (although he confirmed he considered *all* symptoms in the record) that only (potentially) manifested in 2010 or 2011 (before Neff alleges disability) and was gone by 2012 (with the possibility of an isolated weed-eater-induced flare-up in 2013), that Neff himself asserted did not bother him, and that did not keep Neff from exercising and performing vigorous yard (and other) work.

The "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). The ALJ considered all symptoms (which would include edema), and there is clearly substantial evidence (even if there may be evidence pointing the opposite way) that any possible

---

[4] Neff raises an issue with the "leg elevation" treatment suggestion, essentially asserting that Stafford instructed Neff to keep his leg elevated, which would block Neff from being on his feet during a workday, which could eliminate Neff's ability to perform medium work. *See* DE #9-1, at 241 (instructing "leg elevation"). There is some surface appeal to the progression of the argument, but the Court finds it faulty under any critical review. First, of course, this treatment suggestion appears to be from 2010 (Neff does not claim to be disabled until September 2011), and any possibility of edema appears to have dissipated by late 2012. Further, Neff, per his hearing testimony, continued to work, exercise, do yard work, and continue normally about his life after receiving the instruction. Finally, Stafford gave utterly no specifics as to timing, duration, consistency, or frequency—or any other details—of the suggested elevation. It is outright speculation to suggest that Stafford's detailless notation of "leg elevation" eliminated Neff's ability to perform medium work.

edema would not impact the RFC determination. The record, viewed as a whole, demonstrates that, as in *Heston*, substantial evidence supports the ALJ's decision, and he did not commit reversible error by giving careful consideration to the entire record (DE #9-1, at 21) but failing to cite specifically Stafford's 2010-11 edema notation—from before the alleged disability period—that Neff does not actually even allege is disabling. Instead, Neff only speculatively attempts to connect the edema with hypertension. Indeed, edema was not at issue in the disability application or at the ALJ hearing. For all these reasons, substantial evidence supports the ALJ's decision, and the Court sees no reason to order remand. *See Bass*, 499 F.3d at 514 ("This evidence would not change the ALJ's decision, and remand for further consideration is not required."); *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (internal quotation marks and alteration omitted)).

*Second*—back impairment limitations. Neff argues that "the ALJ did not appear to fully appreciate the full range of limitation caused by Neff's back impairment." DE #11-1, at 5. He specifically faults the ALJ's alleged failure to address Dr. Haziq's observations regarding Neff's range of lumbar spine and leg movement. *Id.*

The ALJ extensively analyzed Haziq's evaluation. DE #9-1, at 22-23. He specifically noted Neff's "express[ion of] pain and tenderness in the lumbar spine with mild limitations of movement[,]" including the "leg raising" limitation of "70 degrees bilaterally sitting and supine." *Id.* at 22. The ALJ thus considered precisely the elements Neff erroneously faults him for not considering. ALJ Reynolds noted the "mild limitation

of movement" in the lumbar spine and the leg movement limitation that Haziq evaluated. *See* DE #9-1, at 211 (Haziq noting the limits).

The Court gathers that Neff's true criticism—though muddily presented—concerns the ALJ discounting as "not entirely credible" Neff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms[.]" *See id.* at 26. The Court addresses (and rejects) Neff's argument concerning the ALJ's credibility determinations below, in part D. Here, the Court notes that, per the subsequent merits discussion, the ALJ did not err in the credibility determination and, thus, did not err in discounting Neff's statements concerning movement limitations and pain.

Neff does not explain how a greater appreciation for the range of movement limitations would impact the disability determination anyway, but the Court sees no justification for remand. The ALJ accurately described and fully considered Haziq's evaluation (DE #9-1, at 205-211) and found two possibly connected severe impairments: degenerative joint disease of the bilateral shoulders and low back pain. Neff remained "able to stand unassisted and . . . able to rise from a seat and step up and down from the examination table." *Id.* at 207. Neff "appear[ed] comfortable while sitting and supine." *Id.* Haziq's evaluation "revealed no limitations" on the range of motion of the cervical spine. *Id.* at 208. The ALJ accurately summarized Haziq's findings as to the lumbar spine, with only mild limitations, and leg movement. *See id.* The Court is unsure precisely what the import of Neff's argument is here, but substantial evidence obviously supports the ALJ's decision on this point. The ALJ fully and accurately considered and evaluated Haziq's examination and findings.

*Third*—combination of neuropathy / edema / back pain. Here, Neff faults the ALJ for failing "to adequately consider [how] Neff's edema and his subjective reports of back pain" in conjunction with "Neff's diabetic foot neuropathy" "would affect Neff's ability to" perform "medium work[.]" DE #11-1, at 6.

The Court has already explained above the reasons that edema consideration would not impact the RFC determination. The ALJ found severe impairments to include low back pain and diabetes mellitus II with "early neuropathy of the feet." DE #9-1, at 22. The ALJ comprehensively considered both ailments:

> In terms of the claimant's alleged right hip and shoulder pain, he retains the ability to perform factory work on a part time basis requiring at least medium exertion as well as the ability to care for animals on a small farm. The claimant has only a mildly reduced range of motion in the right shoulder but retains full grip strength. He can stand on one leg at a time without difficulty and has a full range of motion in the hips with no tenderness to palpation. The claimant is prescribed no pain medications for his allegedly disabling pain and the record is void of any emergent treatment of his pain. The claimant's continued work activity coupled with the objective medical findings fails to support disabling limitations related to the claimant's right hip and shoulders.
>
> Despite the claimant's allegations of low back pain, he continues to work on a part-time basis in a factory setting performing at least medium work activity. The record indicates he has only a mildly limited range of lumbar motion with a retained ability to stand on one leg at a time. He has 5/5 motor strength throughout and the record is void of any diagnostic imaging of the claimant's spine. Further, the record fails to reflect any specific treatment received for back pain such as physical therapy, injective therapy or narcotic analgesics. As the claimant continues to work and perform activities including caring for livestock, it appears his low back pain is not as severe as alleged. The record is also void of emergent treatment for the condition.
>
> The claimant has a history of diabetes mellitus for which oral agents are prescribed with some improvements as reflected by the claimant's declining HgA1c levels; however, the claimant has been noncompliant in his physician's directives to cease alcohol consumption and more strictly adhere to a diabetic diet and exercise regimen. Although the claimant has been assessed with neuropathy after exhibiting mildly diminished

sensation in the lower extremities, he is prescribed no medication for the condition. Accordingly, this impairment is not disabling.

*Id.* at 26-27. Substantial evidence supports this thorough assessment, and the Court declines to disturb it.

As an initial matter, of course, Neff's argument that the ALJ "failed to consider how . . . these impairments in combination would affect Neff's ability to . . . perform . . . medium work" is demonstrably wrong, per the ALJ's discussion reprinted above. The ALJ carefully explained his reasons, in sequence, for not finding either the neuropathy or back pain to preclude Neff from performing medium work. Substantial evidence, as the Court documents, supports his conclusions.

As to back pain, as the ALJ recounted: Neff (1) continued to work up to 30 hours per week in a factory (*see* DE #9-1, at 37);[5] (2) had only limited movement restrictions and the ability to stand unassisted (*see id.* at 207, 211);[6] (3) had full motor strength (*see id.* at 208); (4) received no specific treatment for the alleged pain; and (5) continues to work, exercise, do yard work, and care for animals (*see id.* at 46, 238, 241, 246, 255, 257). These considerations were entirely proper. *See* 20 C.F.R. § 404.1571 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful

---

[5] One week, Neff actually worked 34.5 hours. DE #9-1, at 43. In fact, the only reason Neff gave at the hearing for not working even more hours (and thus more likely preclude a disability finding altogether) was that the factory did not "have enough work." *Id.* at 42.
[6] Indeed, Neff asserted that, despite some detailless "aches," he can remain standing at work: "But when I'm at work, I -- you know, you've got to stand, because they don't -- they frown on you sitting down." DE #9-1, at 50-51.

11

activity."); *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled."); 20 C.F.R. § 404.1529(c)(3)(i) (consider daily activities); *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001-02 (6th Cir. 2011) ("Third, the ALJ noted that Dr. Cheng's modest treatment regimen for Helm—consisting solely of pain medication—was inconsistent with a finding of total disability. The ALJ noted that Helm's pain was being effectively managed with medication, and that she had not sought or received physical therapy or other alternative treatment. Finally, the ALJ discounted Dr. Cheng's assessment in part because Helm 'continues to perform significant activities around the house,' which, according to the ALJ, was also inconsistent with a finding of total disability. Taken together, these are 'good reasons' for discounting Dr. Cheng's opinion." (internal citation omitted)). The ALJ defensibly concluded, considering these factors and the full record, that "it appears [that Neff's] low back pain is not as severe as alleged." DE #9-1, at 27.

As to neuropathy, the ALJ found that Neff was "prescribed no medication" for the condition and it was thus "not disabling." DE #9-1, at 27. The ALJ previously had noted that Neff exhibited only "mildly diminished sensation to light touch on the plantar surface of the feet." *Id.* at 22. Despite this, in September 2013, Neff "reported he was out in the yard every day[.]" *Id.* The ALJ summarized his findings as to restrictions in various functional areas:

> The claimant continues to work part-time in a factory and has also worked after his alleged onset date as a school bus monitor; positions requiring a great deal of social interaction. Further, he maintains a relationship with his wife and son. He also raises a few cattle and a pig. These retained abilities support no more than mild limitations in activities of daily living,

social functioning and the claimant's ability to maintain concentration, persistence and pace.

*Id.* at 23. The Court adds that Neff, in fact, actively declined diabetes medication. *See id.* at 217 ("Recommended insulin. He refused."); *id.* at 231 ("He adamantly refuses insulin and byetta."). Whether a claimant takes medication, and the general course of treatment of an ailment, are proper considerations in this inquiry. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(vi). Neff professed at the ALJ hearing that no medical provider had ever even "suggested" that he "try Neurontin or some other kind of medication for [his] feet[.]" DE #9-1, at 44.

In sum, substantial evidence clearly supports the ALJ's RFC determination.[7] ALJ Reynolds carefully evaluated the full record, provided specific and comprehensive reasons for his decision, and defensibly evaluated the evidence. The Court does not reverse the ALJ in these circumstances—even on a record that theoretically contains substantial evidence to support the opposite conclusions. *Warner*, 375 F.3d at 390.

> C.   *The ALJ did not abuse his discretion in declining to request an additional consultative examination.*

Second, Neff argues that the ALJ abused his discretion by declining to request another consultative examination of Neff. DE #11-1, at 6-8.

An ALJ is authorized, but not required, to request a consultative examination when necessary. 20 C.F.R. § 404.1517; 20 C.F.R. § 404.1519(a); *see also McKensey v. Comm'r of Soc. Sec.*, 132 F.3d 33, No. 96-4268, 1997 WL 764480, at *3 (6th Cir. Nov. 24, 1997) (affirming the ALJ's decision not to order an additional examination because, "while such an examination might produce some information which could be material to

---

[7] Other substantial record evidence supports the ALJ's conclusions. *See, e.g.*, DE #9-1, at 77-81 (Hernandez evaluation); 205 (Haziq report accurately summarizing pain complaints).

the claim, the claimant has by no means demonstrated that consultative examination is *necessary* to a complete evaluation of the claim of disability in this case" (emphasis in original)); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); *Powell v. Astrue*, No. 5:10-CV-248-KKC, 2011 WL 3489995, at *4 (E.D. Ky. Aug. 9, 2011). Whether to order an examination is, accordingly, a matter in the ALJ's discretion, as Neff recognizes. *See Foster v. Halter*, 279 F.3d 348, 355-56 (6th Cir. 2001); DE #11-1, at 7. "An ALJ has discretion to determine whether further evidence, such as additional testing, is necessary." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009).

The Court reviews the ALJ's decision on the matter under the deferential abuse of discretion standard. *Foster*, 279 F.3d at 356 (finding no abuse of discretion in not ordering additional examination); *Hayes*, 357 F. App'x at 675. "[D]eference . . . is the hallmark of abuse-of-discretion review." *Gen. Elec. Co. v. Joiner*, 118 S. Ct. 512, 517 (1997). An ALJ abuses his discretion when he takes "arbitrary action not justifiable in view of [the] situation and circumstances." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 267 (6th Cir. 2001) (An "arbitrary, unjustifiable or clearly unreasonable" holding is an abuse of discretion).

Here, the ALJ obviously did not abuse his discretion by not requesting or ordering an additional examination of Mr. Neff. Claimant levies three specific complaints—that there was a "small amount of treatment evidence," there was a "lack of an opinion from an examining source," and Hernandez's opinion was inadequately supported. DE #11-1,

at 8. The Court rejects the first one out of hand. The ALJ had plenteous medical records to examine, including the results of a consultative examination with Dr. Haziq, the report of consultant Dr. Hernandez, and copious records from Dr. Stafford and other providers. This was no "small amount of treatment evidence." That the evidence did not demonstrate a disabling condition does not make the record objectively inadequate.

Neff cites no authority for the proposition that the record must contain an opinion from an examining source for the ALJ to make a disability determination, and the Court is aware of none. An opinion from a non-examining consultant may alone be the basis for the ALJ's opinion, *even when* it conflicts with one from a treating source. *See Blakley*, 581 F.3d at 409; *Gayheart*, 710 F.3d at 379 ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Helm*, 405 F. App'x at 1002 ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'"); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error."). Of course, here, the consultant's opinion did not conflict with a treating source's, and the ALJ did not err in his reliance on its uncontradicted findings. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) ("[A] written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings . . . may constitute substantial evidence adverse to the claimant in a disability hearing." (internal alterations and quotation marks removed) (quoting and citing *Richardson*, 91 S. Ct. at 1428)).

15

Regarding the third suggestion, Dr. Hernandez opined in January 2013 that Neff is not disabled. *See* DE #9-1, at 74-81. Neff points the Court to certain records after January 2013 that Dr. Hernandez could not, by definition, have considered. None requires reversal. For many of the reasons already discussed above, the February and March 2013 treatment indicates nothing that would change the disability calculus (at least in a pro-Neff way). *Id.* at 215, 219-21. Neither do the July, August, and September 2013 records. *Id.* at 246, 252, 257. [For that matter, neither does the November 2012 report, if Hernandez did not review it. *Id.* at 223.] It is worth remembering that Neff alleges disability beginning in September 20*11*. Cheron Vincent, Hernandez's supervisor / reviewer, specifically "thoroughly reviewed" Hernandez's report and found "the total evidence of record [to be] sufficient and consistent to support the proposed determination" of not disabled. *Id.* at 81. Of course, the ALJ found, after carefully considering "the record in its entirety," more Neff restrictions than Hernandez, giving the doctor's findings "some weight." *Id.* at 27.

For all these reasons, it was not necessary for the ALJ to order additional testing at the Government's expense. The record—buttressed by a consultant's opinion, years of providers' medical records, and the report of an examiner—contained sufficient evidence to make a disability determination. Neff did not argue to the contrary at the time of the hearing. The ALJ did not abuse his discretion by relying on the evidence in the record rather than ordering an additional examination. ALJ Reynolds's careful and rational decision was certainly not arbitrary, unjustifiable, or clearly unreasonable.

D. *The ALJ did not err in assessing credibility.*

Neff next challenges the ALJ's assessment of Neff's own credibility. DE #11-1, at 8-14. Specifically, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible[.]" DE #9-1, at 26. The decision noted "numerous inconsistencies" in the record. *Id.* ALJ Reynolds cited at least 6 specific reasons to discount Neff's statements: (1) "he continues to work part time in a position requiring at least medium physical exertion"; (2) "no medications are prescribed for" the alleged neuropathy; (3) "he retains a full range of motion in the hips and no tenderness to palpation"; (4) "he retains the ability to . . . care for animals on a small farm; (5) he "has only a mildly reduced range of motion in the right shoulder but retains full grip strength; and (6) he "is prescribed no pain medications for his allegedly disabling pain and the record is void of any emergent treatment of his pain." *Id.* In sum, the ALJ discounted Neff's version due to his continued work activity, his continued work around the house and yard, the lack of prescribed medications for various alleged conditions, the objective medical proof, and the plenary record of treatment.

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility. Rather, such determinations must find support in the record." *Id.* (internal quotation marks and citation omitted). The "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is

charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation removed); *see also Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (affording a credibility determination "special deference because the ALJ is in the best position to see and hear the witness and determine credibility").

Here, substantial evidence supports ALJ Reynolds's credibility assessment of Neff. The ALJ adequately justified his credibility determination. Neff challenges the assessment on multiple fronts, but none has merit. The Court gives the ALJ's decision "a commonsensical reading rather than nitpicking at it," although Neff requests the Court to do more of the latter than the former. *Id.*

First, Neff attacks the ALJ's notation that Neff's part-time work "requir[ed] at least medium physical exertion." DE #11-1, at 9-10. It is unclear precisely how the ALJ came to the "medium physical exertion" determination as to the shock- and strut-inspector job (although Neff did acknowledge that it was "pretty tough work," DE #9-1, at 39). The definition of "medium work" has distinct characteristics. *See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."); *Kifayeh v. Colvin*, 99 F. Supp. 3d 369, 375-76 (E.D.N.Y. 2015) (citing the regulation and expanding: "Medium work also involves standing and/or walking for six hours in an eight-hour workday, and sitting for the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. Finally, in

most medium jobs, being on one's feet for most of the workday is critical."); *Luukkonen v. Comm'r of Soc. Sec.*, ___ F. App'x ___, No. 15-1561, 2016 WL 3426370, at *3 & *3 n.4 (6th Cir. June 22, 2016). Notably, Neff agreed he could carry up to 50 pounds, described an ongoing job with significant exertional demands (to include use of a hand-held tool and die to rethread or clean threads from shocks and struts), described standing on concrete during his full shift, and reported he had worked three+ consecutive days for three straight weeks and up to a 34.5 hour week. *See* DE #9-1, at 34, 40, 47-49, 50. The ALJ's use of the reference "medium" certainly had a logical basis in the record, even under the particular SSA definition. That Neff's actual work, at "near SGA levels," *id.* at 9, involved such demands surely and substantially supports the ALJ's credibility criticisms.

Even so, the Court does not read, performing a common-sense analysis, the distinct "medium physical exertion" statement as factoring into the ALJ's discrete credibility analysis in any meaningful way. The ALJ was more concerned with Neff's continued employment during a period he alleged he was too disabled to work. The ALJ summed up his unease: "The claimant's continued work activity . . . fails to support disabling limitations[.]" DE #9-1, at 26. The ALJ's principal concern was with *the fact of* continued work, as well as the temporal and exertional demands of that work. *See id.* at 27 ("As the claimant continues to work . . . it appears his low back pain is not as severe as alleged."). Not only did Neff continue to work in a factory, he also worked "as a school bus monitor." *Id.* at 37-38. The ALJ was hardly wrong to question Neff's description in light of Neff's actual work life at the time of the hearing.

Second, Neff faults the ALJ's consideration of Neff's lack of pain medication and general pursuit of treatment for the alleged pain. Particularly, Neff cites Social Security Ruling 96-7, which provides, in relevant part, that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide[.]" SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). There are suggestions, as Neff indicates, in the hearing testimony that Neff may not be able to afford insurance and may (perhaps irrationally) fear addiction to certain medication. The ALJ explicitly noted Neff's lack of insurance, so Neff's argument as to the first consideration is wrong. DE #9-1, at 26 ("The claimant has no insurance."). Neff's reference to addiction fear is completely apropos to whether he would take pain medication, if prescribed. In fact, Neff explicitly confirmed that he would take medicine prescribed. *Id.* at 51 ("I don't take any more medicine than what I'm prescribed to take."; "I just use whatever I'm prescribed to take."). The comment about fearing addiction solely related to Neff's desire not to take (in his view) unnecessary over-the-counter pain pills like Advil. *Id.* The ALJ's specific concern was that Neff "is prescribed no pain medications for his allegedly disabling pain[,]" and neither criticism Neff levies impacts that assessment (and simple fact of treatment). *See, e.g., Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 424 (6th Cir. 2013) (not relying on the general SSR 96-7p statement because "whether [the claimant] failed to seek medical treatment for a legitimate or an illegitimate reason, the fact remains that [he] bears the burden of demonstrating that he suffers from a medically determinable physical impairment").[8] It is rational to question

---

[8] The Court does not view Neff's third criticism, on which he spends a significant portion of his brief, to be relevant, in any meaningful way, to the credibility decision. *See* DE

pain intensity where a claimant, regularly treated, receives no pain medication or prescription.

Next, Neff complains about the ALJ's consideration of his activity raising farm animals. At the hearing, Neff testified that he "piddle[s] in the yard" and has a couple of animals (of some sort; the transcript says "[INAUDIBLE]") "ready to put meat in the freezer." DE #9-1, at 49. It is true, as Neff argues, that he "did not specify what exactly owning those animals entails in terms of activity." DE #11-1, at 13. Neff, however, volunteered the information in response to the question, "What do you do when you're not working?" DE #9-1, at 48-49. While the record certainly does not detail the precise work necessitated by farm animal ownership, the ALJ certainly reasonably took Neff's admission to raising animals (to the point of "put[ting] meat in the freezer") to necessitate some degree of labor, which he then reasonably considered, as one factor out of many, in whether to credit Neff's claims of disabling pain. The inquiry here is not the ultimate disability question, but rather whether the ALJ reasonably assessed Neff's credibility. He quite understandably took account of Neff's farming or husbandry activities (one of the

---

#11-1, at 11-13. The ALJ remarked, while considering Neff's diabetes, that he "has been noncompliant in his physician's directives to cease alcohol consumption and more strictly adhere to a diabetic diet and exercise regimen." DE #9-1, at 27. The Court does not see how noncompliance with a doctor's orders goes to the specific issue of testimonial credibility, and the Court does not read the ALJ's opinion to rely on the statement to support his credibility finding. It appears merely to be a comment concerning the course of treatment for Neff's diabetes (and Neff was always candid about his continued drinking). The remark is thus no basis for remand. The Court does note, though, that substantial evidence in the record supports the ALJ's finding of non-compliance (even if some evidence may support the opposite conclusion as well). *See* DE #9-1, at 217-18 ("Recommended stopping even the low alcohol beer. He did not seem interested at this time."); *id.* at 219 (noting Neff is "wishy-washy on the diabetic diet sometimes"); *id.* at 223 ("He did not increas[e] exercise."); *id.* at 225 ("Recommend decrease alcohol"); *id.* at 228 ("Decrease or eliminate alcohol."); *id.* at 45 (March 2014 hearing transcript) (Neff stating he still drank "two or three" beers a day).

things Neff "do[es]" when he is "not working") when considering assertions of disabling pain.

Finally, Neff argues, as a general matter, that "the Sixth Circuit does not require objective evidence of a claimant's pain so long as the impairment is established by objective evidence." DE #11-1, at 14 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). That may be so, but the Court fails to see any connection between that general statement and the ALJ's assessment of Neff's credibility. The inconsistencies the ALJ found between Neff's subjective statements of pain and the objective medical evidence surely may factor into the overall credibility determination. Neff cites no authority to the contrary.

In sum, "[b]ecause the ALJ considered the evidence in the record and provided specific reasons for his credibility findings, his decision is entitled to great deference and is supported by substantial evidence." *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008). It is worth remembering that "an ALJ is required to—and, in this case, did—provide specific reasons for crediting or discrediting a claimant's testimony. But he is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.' 20 C.F.R. § 404.953. The ALJ's opinion did just that: the ALJ cited to evidence and fully explained the reasons for denying [Neff]'s application. Further, the ALJ stated that he reached his conclusion after careful consideration of the entire record—which [the Court] ha[s] no reason to doubt after [its] own independent review of the record." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (internal quotation marks, citation, and alteration omitted). The ALJ here made findings

of individual credibility, which the Court does not second-guess because they were reasonable and fairly substantiated. *See Bass*, 499 F.3d at 509.

      E.      *The ALJ did not err in posing the hypothetical to the VE.*

Finally, Neff asserts that, due to the ALJ's other alleged errors, the hypothetical the ALJ posed to the VE was incomplete. DE #11-1, at 14-15. Neff faults the VE's testimony as "elicited in response to an incomplete hypothetical question." *Id.* at 14. Specifically, Neff targets the ALJ's alleged failure to "account for all of Neff's physical impairments in the hypothetical question or the RFC," incorporating the alleged edema, extent of limitations, insufficiently complete record, and credibility errors previously asserted. Because of this combination of errors, Neff argues, the ALJ "failed to accurately portray Neff's physical limitations in the hypothetical question to the VE." DE #11-1, at 15.

VE testimony can be substantial evidence supporting the ALJ's step five finding. *Felisky*, 35 F.3d at 1035-36. The VE hypothetical "should be a more complete assessment of [a claimant's] physical and mental state [than the RFC] and should include an accurate portrayal of her individual physical and mental impairments." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (internal quotation marks and alterations omitted). "Thus, while the RFC should focus on [a claimant's] abilities or, in other words, what [he] can and cannot do, the hypothetical question should focus on [his] overall state including [his] mental and physical maladies." *Id.* Subsequent decisions clarify *Howard*'s holding. *Howard* held "only that a denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity, a description of what the claimant 'can and cannot do,' must be reversed." *Webb v. Comm'r of Soc. Sec.*,

368 F.3d 629, 631 (6th Cir. 2004). The language in *Howard* "requiring that hypothetical questions include lists of claimants' medical conditions" was "unnecessary to the outcome" and "impermissibly conflict[s] with [the Sixth Circuit's] prior decisions." *Id.* at 631, 633. The Sixth Circuit "cannot read *Howard* to create an entirely new requirement for hypothetical questions to vocational experts." *Id.* at 633. However, "[i]f the hypothetical question does not accurately portray Plaintiff's physical and mental state, the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work." *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007). The ALJ must "incorporate only those limitations accepted as credible." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ's hypothetical to the VE is at DE #9-1, at 58. The VE responded by saying that while such a putative person could not perform any of Neff's past relevant work, that person could perform "medium, unskilled inspecting jobs," "medium assembling jobs," and "hand working, hand-packing jobs," all of which exist in significant numbers in the Commonwealth and the nation. DE #9-1, at 58. The ALJ carefully tailored the hypothetical to Neff's particular situation, even accounting for the additional limitations that the ALJ found, and made an individualized determination considering all the evidence. *See id.* at 28 (ALJ Reynolds noting that he incorporated "additional limitations" in the hypothetical and considered "the testimony of the vocational expert," as well as Neff's "age, education, work experience, and residual functional capacity" to come to the conclusion).

Because the Court has found no reversible error concerning any of the prior arguments, and those arguments are the sole bases for the alleged VE hypothetical error here, the Court finds no reversible error as to the ALJ's hypothetical. In sum, there was no error in the RFC determination, the ALJ did not abuse his discretion in not ordering an additional examination of Neff, and the ALJ did not err in his credibility analysis. The record-based hypothetical was, accordingly, proper, and the Court declines to reverse the ALJ's reliance on the VE's answer. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

## III.   CONCLUSION

In all respects, substantial evidence supports the Commissioner's determination to deny Neff benefits, and the ALJ's decision was legally proper. The Court therefore **RECOMMENDS** that the District Judge **GRANT** the Commissioner's motion (DE #12), **DENY** Neff's motion (DE #11), affirm the administrative decision, dismiss Plaintiff's Complaint with prejudice, enter a corresponding judgment, and strike the matter from the active docket.

*   *   *   *   *

The Court issues this Recommended Disposition under 28 U.S.C. § 636(b)(1)(B). The parties should consult the statute and Fed. R. Civ. P. 72(b) for specific appeal rights and mechanics. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas*

25

*v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 25th day of August, 2016.

Signed By:

*Robert E. Wier*

United States Magistrate Judge